**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| ORGANIZATION FOR BLACK STRUGGLE, ST. LOUIS A. PHILIP RANDOLPH INSTITUTE, GREATER KANSAS CITY A. PHILIP RANDOLPH INSTITUTE, NATIONAL COUNCIL OF JEWISH WOMEN ST. LOUIS SECTION, and MISSOURI FAITH VOICES, | No. 2:20-cv-4184 |
| *Plaintiffs*, | |
| v. | |
| JOHN R. ASHCROFT, in his official capacity as the Missouri Secretary of State, and | |
| GREENE COUNTY CLERK'S OFFICE; JACKSON COUNTY ELECTION BOARD; ST. CHARLES COUNTY ELECTION AUTHORITY; and ST. LOUIS COUNTY BOARD OF ELECTIONS, and all others similarly situated, | |
| *Defendants*. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Organization for Black Struggle, the St. Louis A. Philip Randolph Institute, the

Greater Kansas City A. Philip Randolph Institute, National Council of Jewish Women St. Louis,

and Missouri Faith Voices, by their undersigned counsel, and for their Complaint against

Defendants John R. Ashcroft, in his official capacity as the Missouri Secretary of State, Greene

County Clerk's Office, Jackson County Election Board, St. Charles County Election Authority,

and St. Louis County Board of Elections, and all others similarly situated, allege as follows:

1

# INTRODUCTION

1.    The COVID-19 pandemic has made opportunities to vote remotely, on a date or at a location other than an Election Day polling site, essential for many Missouri voters seeking to avoid the risk of exposure or exposing others to the deadly coronavirus. Recognizing this, Missouri lawmakers recently enacted a law expanding excuse-based absentee voting options for categories of persons at extreme risk for COVID-19 and providing any eligible voter in the state with a way to vote by mail in the remaining 2020 elections. However, Missouri has unlawfully burdened its remote voting processes in ways that will disenfranchise thousands of Missouri voters in the November 3, 2020, election, unless this Court orders immediate relief.

2.    Plaintiff voter engagement groups challenge three specific unlawful remote voting[1] practices. First, the state inexplicably allows "absentee" voters to request their ballots by email or fax and to return them to their local election office in person, while requiring "mail-in" voters to request their ballots *only* by mail or in person and to return them *only* by mail. Voters who vote remotely by mail must undergo a cumbersome and time-consuming process to receive, cast, and return their ballots, which is not imposed on voters who vote remotely by absentee ballot. With disruptions and delays in postal delivery and the United States Postal Service warning that there will be timely requested and mailed ballots that it cannot return in time to meet Missouri's receipt deadline of the close of polls on Election Day, many voters will need the option to drop off their ballot in person to avoid

---

[1] Missouri law distinguishes between excuse-based "absentee" ballots that are received and cast by mail and the new no-excuse "mail-in" ballots. Throughout this Complaint, "remote voting" will be used to reference mail voting generally, including both excuse-based absentee voting conducted by mail and no-excuse mail-in voting. Likewise, "ballots cast by mail" will reference any ballot requested or cast by mail, including both absentee mail ballots and mail-in ballots.

disenfranchisement or, in the alternative, the receipt requirements for remote ballots must be adjusted. Denying either of these options to "mail-in" voters unconstitutionally burdens their fundamental right to vote in violation of the First and Fourteenth Amendments.

3.  Second, for both categories of remote voters, the state requires ballots to be rejected for technical reasons that are not material to the voter's eligibility—like failing to state or check a box indicating the voter's address of registration is the same as their mailing address, which the state already has on file and which the voter already affirmed on their remote ballot application form. Rejection of ballots for minor, immaterial errors violates the Materiality Provision of the Civil Rights Act of 1964.

4.  Third, Missouri law provides no mandatory process to notify remote voters that the statement on their ballot envelope is somehow defective and will be rejected, nor an opportunity to cure any defects prior to rejection. While some local election officials undertake to provide such a process, this is done arbitrarily and at their discretion, and is insufficient to satisfy constitutional requirements. Based on historical rejection rates, including high rates of ballot rejection due to "faulty statement" during the recent August 2020 primary elections, tens of thousands of Missouri voters are at risk of having their remote ballots rejected in the November 3, 2020, election without even knowing it, let alone being given a chance to prevent it. Depriving remote voters of their fundamental right to vote without notice and an opportunity to cure violates their right to procedural due process as protected by the Fourteenth Amendment.

5.  To remedy the above violations and to protect the rights of Plaintiffs, their members, and the communities they serve, Plaintiffs ask this Court to order declaratory and injunctive

3

relief requiring Defendants and their officers and agents to promptly and fully remedy these violations of federal law.

## JURISDICTION AND VENUE

6. Plaintiffs set forth claims under the First and Fourteenth Amendments to the United States Constitution and the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101, pursuant to 42 U.S.C. § 1983.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights cases).

8. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

9. Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and Defendant Ashcroft, along with some members of Defendant Class, resides in and conducts business in this district.

10. Divisional venue is in the Central Division because Defendant Ashcroft is located in Cole County.

## PARTIES

11. Plaintiff Missouri Faith Voices ("MFV") is a multi-faith, multi racial, statewide, non partisan organization that is committed to empowering and transforming the lives of ordinary citizens who have been targeted by unfair policies and practices and oppressed by racial and economic injustice. MFV works to create hope, produce the power and equip those who are impacted with the knowledge and political will needed to create a just society for all Missourians. Inspired by faith, MFV is committed to transforming the lives of individuals and families who have been historically impacted by racism and injustice by

4

equipping them to challenge the systems that create those conditions and inviting community stakeholders to co-create a moral vision for Missouri and engage in the prophetic action necessary to make it a reality.

12. Voting rights is one core issue of MFV's work through its "Faith in Democracy" program, which works to ensure free and fair access to the vote and fair representation. Missouri Faith Voices is a member of the Missouri Voter Protection Coalition and has helped lead efforts related to voter identification laws, redistricting reform and other measures.

13. Following the onset of the COVID-19 pandemic, MFV joined policy recommendations with other voter advocates urging Missouri leaders to take steps to ensure that all voters could cast a remote ballot without undue impediments, including advocating for relaxing deadlines and requirements for requesting and returning remote ballots during the pandemic.

14. MFV's members and constituencies it serves experienced confusion and difficulties casting ballots during the August 2020 elections in Missouri due to the differing rules for requesting and returning absentee and mail-in ballots, mail delays, and rejection of ballots due to deficiencies on their ballot envelope forms.

15. MFV has had to divert resources from its other core work, including healthcare, criminal justice, and anti-poverty work, as well as advocacy on voting rights ballot measures, such as Amendment 3 on the ballot in Missouri in November, to educate its members and the constituencies it serves about different and confusing rules for requesting and returning absentee and mail-in ballots and assisting its constituencies with questions regarding their ballots.

16. Plaintiff National Council of Jewish Women-St. Louis Section ("NCJWSTL") is a nonpartisan, nonprofit grassroots membership organization inspired by Jewish values to advance social and economic justice for women, children and families. It is an affiliate of the National Council of Jewish Women (NCJW), the oldest volunteer Jewish women's organization in the United States founded in 1893. Two years later, in 1895, NCJWSTL was established. NCJW consists of 90,000 advocates across the country. There are sixty-two sections in twenty-one states, including NCJWSTL, which has over 5000 members and supporters in Missouri.

17. NCJWSTL works to safeguard rights and freedoms, including the right to vote. NCJWSTL is an active member of the Missouri Voter Protection Coalition, tracks voting legislation, and engages in advocacy with lawmakers and election officials on issues related to the right to vote. Its staff and members participate as non-partisan election monitors to respond to voter issues arising with elections.

18. Following the onset of the COVID-19 pandemic, NCJWSTL signed on to policy recommendations with other voter advocates urging Missouri leaders to take steps to ensure that all voters could cast a remote ballot without undue impediments, including advocating for relaxing deadlines and requirements for requesting and returning remote ballots during the pandemic.

19. NCJWSTL members and constituencies it serves experienced confusion and difficulties casting ballots during the August 2020 elections in Missouri due to the differing rules for requesting and returning absentee and mail-in ballots, mail delays, and rejection of ballots due to deficiencies on their ballot envelope forms and lack of notice and opportunity to cure.

20.     NCJWSTL staff and volunteers participated as poll monitors in Missouri's nonpartisan Election Protection effort during the August 2020 elections, where they tracked issues at the polls and responded to voter concerns. NCJWSTL responded to problems from its members and other voters navigating differing rules for absentee and mail-in ballots and responding to voters whose ballots had deficiencies and were at risk of rejection. Its members participated in efforts to try to reach voters whose ballots had deficiencies.

21.     NCJWSTL has had to divert resources from its other core work, including healthcare access, criminal justice reform, and anti-trafficking work to educate its members and the constituencies it serves about different and confusing rules for requesting and returning absentee and mail-in ballots and assisting its constituencies with questions regarding their ballots.

22.     Plaintiff Organization for Black Struggle ("OBS") was founded in 1980. A group of veteran activists, students, union organizers and community members in St. Louis were seeking to address the needs and issues of the Black working-class. There was a vacuum of Black radical leadership that could boldly speak and act, unencumbered by government or corporate structures. OBS has been called to lead in many other issues facing the Black community such as health care, public education, housing, media, and internationalism. Its mission is to build a movement that fights for political empowerment, economic justice and the cultural dignity of the Black community, especially the Black working class.

23.     Among other issues, OBS works on voting rights, in particular, works to end voter suppression and disenfranchisement. It fights fight for a political system that results in a real democracy where Black people and all marginalized people can effectively exercise full political power. It is a member of the Missouri Voter Protection Coalition.

24.     Following the onset of the COVID-19 pandemic, OBS joined policy recommendations with other voter advocates urging Missouri leaders to take steps to ensure that all voters could cast a remote ballot without undue impediments, including advocating for relaxing deadlines and requirements for requesting and returning remote ballots during the pandemic.

25.     In the wake of challenges to voting amid the COVID-19 pandemic and racial justice battles in the St. Louis, OBS launched its "Respect My Vote" campaign for the August 2020 elections to help its members vote.

26.     OBS's members and constituencies it serves experienced confusion and difficulties casting ballots during the August 2020 elections in Missouri due to the differing rules for requesting and returning absentee and mail-in ballots, mail delays, and rejection of ballots due to deficiencies on their ballot envelope forms.

27.     In order to educate its members and the constituencies it serves about different and confusing rules for requesting and returning absentee and mail-in ballots and assisting its constituencies with questions regarding their ballots, OBS has had to divert resources from its other core work, including voter registration and education about candidates and ballot issues, racial justice, criminal justice reform, combatting police brutality, women's rights, youth empowerment, and workers' rights.

28.     Plaintiff St. Louis Chapter of the A. Philip Randolph Institute ("APRI St. Louis") is a local chapter of the A. Philip Randolph Institute, a national organization for African-American trade unionists and community activists, established in 1965 to forge an alliance between the civil rights and labor movements. APRI is a senior constituency group of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO").

29.     APRI St. Louis focuses the bulk of its work on voter education, registration, and outreach efforts at community events, churches, and schools. These voter efforts have traditionally targeted underserved communities, lower propensity voters who may be unfamiliar with voting rules, and areas where a high proportion of eligible voters are not registered at their current residence. It is an active member of the Missouri Voter Protection Coalition.

30.     Following the onset of the COVID-19 pandemic, APRI St. Louis signed on to policy recommendations with other voter advocates urging Missouri leaders to take steps to ensure that all voters could cast a remote ballot without undue impediments, including advocating for relaxing deadlines and requirements for requesting and returning ballots cast by mail during the pandemic.

31.     APRI St. Louis' members and constituencies it serves experienced confusion and difficulties casting ballots during the August 2020 elections in Missouri due to the differing rules for requesting and returning absentee and mail-in ballots, mail delays, and rejection of ballots due to deficiencies on their ballot envelope forms.

32.     APRI St. Louis has had to divert resources from its other core work this year, including canvassing the St. Louis area to get people to complete the sentence, engaging in education efforts encouraging voters to check their polling places and confirm that they received their voter cards, and advocacy on voting rights ballot measures, such as Amendment 3 on the ballot in Missouri in November, in order to educate its members and the constituencies it serves about different and confusing rules for requesting and returning remote ballots, providing ride for absentee voters to cast ballots in person during the absentee voting period, providing voters whose remote ballots have deficiencies with rides to make sure

they are able to correct those deficiencies, and assisting its constituencies with questions regarding their ballots.

33.    The Greater Kansas City Chapter of the A. Philip Randolph Institute ("APRI GKC") is also a local chapter of the A. Philip Randolph Institute, a senior constituency group of the AFL-CIO.

34.    Like APRI St. Louis, APRI GKC's work focuses on voter education, registration, and outreach. APRI GKC regularly conducts and participates in a variety of voter registration, education and voter engagement activities, including voter registration and education efforts at community events, churches, and schools. These voter outreach efforts have traditionally focused on underserved communities, lower propensity voters who may be unfamiliar with voting rules, and areas where a high number of individuals reside who are not registered at their current residence.

35.    APRI GKC allots a significant amount of time and organizational resources, such as volunteer time, to voter education efforts in service of its members and the constituencies it serves. APRI GKC's engages in voter registration drives and voter education trainings at union meetings, schools, libraries, and local businesses and helps organize voter education and outreach events.

36.    Following the onset of the COVID-19 pandemic, APRI GKC joined policy recommendations with other voter advocates urging Missouri leaders to take steps to ensure that all voters could cast a remote ballot without undue impediments, including advocating for relaxing deadlines and requirements for requesting and returning ballots cast by mail during the pandemic.

37. For more than a decade, APRI GKC has served as a poll monitor captain for the Kansas City Election Protection effort, where it organizes and trains volunteers to participate as poll monitors in Missouri's nonpartisan Election Protection program. It organized poll monitoring during the August 2020 elections, where its volunteers monitored and tracked issues at the polls and responded to voter concerns. APRI GKC responded to problems from its members and other voters who had difficulties navigating differing rules for absentee and mail-in ballots and responding to voters whose ballots had deficiencies and were at risk of rejection.

38. APRI GKC's members and the constituencies it serves experienced confusion and difficulties casting ballots during 2020 elations in Missouri due to the differing rules for requesting and returning absentee and mail-in ballots, mail delays, and rejection of ballots due to deficiencies on their ballot envelope forms.

39. APRI GKC has had to divert resources from its other core work, including voter registration, get out the vote efforts, advocacy on voting rights ballot measures, such as Amendment 3 on the ballot in Missouri in November, providing rides to the polls and workers' rights in order to educate its members and the constituencies it serves about different and confusing rules for requesting and returning absentee and mail-in ballots and assisting its constituencies with questions regarding their ballots.

40. As a result of the challenged mail voting provisions and practices, Plaintiffs members have faced confusion and undue barriers to casting their ballots by mail and having their ballots counted, including, upon information and belief, having their ballots rejected due to being received after the deadline and being rejected for deficiencies on the ballot envelope. Moreover, Plaintiffs have had to divert its resources to ensure that voters understand how

to successfully cast their ballot by mail, including educating about the need to return ballots early and complete confusing forms on the ballot envelope. They additionally have had to spend significant time educating other community groups about the risk of disenfranchisement due to the challenged mail voting provisions and practices and have devoted time to engaging their membership base about these issues. These activities have diverted resources away from other aspects of their work in furtherance of their core missions. These injuries to the Plaintiffs will be significantly exacerbated by increased voter participation in the November 2020 elections so long as these arbitrary rules and lack of procedural protections ensue.

41. Defendant John R. Ashcroft is the Missouri Secretary of State, the state's chief state election official, who is responsible for implementation of all laws related to voting and providing guidance related to those laws to local election authorities, including MO. REV. STAT. §§ 115.295, 115.302. Defendant Ashcroft also exercises authority over aspects of absentee and mail voting, including the authority to prescribe uniform regulations for ballot envelopes and mailing envelopes, § 115.285, and administering the repayment to local election authorities of all costs associated with their provision of postage-prepaid mailing envelopes for all ballots cast by mail. § 115.285.

42. Defendant class, the Greene County Clerk's Office, Jackson County Election Board, St. Charles County Election Authority, and St. Louis County Board of Elections represent equally both major political parties and serve both urban and rural election authorities, and thus represent the interest of Missouri's 116 local election authorities. Missouri's 116 local authorities receive and process requests for absentee and mail ballots, MO. REV. STAT. § 115.279; § 115.302; are responsible for accepting or rejecting requests for absentee and

12

mail ballots, § 115.297(2), § 115.302; send mail and absentee ballots, § 115.284; § 115.302(12); review absentee and mail ballots, determining which ones are counted and which are rejected, § 115.299, § 115.302(18); and could provide pre-rejection notice and an opportunity to cure errors in mail or absentee ballots, *see* § 115.043.

## FACTS

43.    The novel coronavirus, and the disease it causes, known as COVID-19, is an acute respiratory illness that, to date, has killed over 200,000 persons nationwide. In Missouri alone, over 100,000 people have tested positive for COVID-19 and nearly 2,000 people have died from the disease. There is currently no known cure, no effective treatment, and no vaccine. Public health officials warn that the pandemic is likely to worsen and that infection rates may surge in advance of the November 3, 2020 election. There is no guarantee that an effective vaccine, once approved, will give more than short-term protection; nor is a vaccine expected to be proven, let alone widely available, in advance of the November 3, 2020 election.

44.    People who are infected with the coronavirus but are asymptomatic may inadvertently and unknowingly infect others. The highly contagious nature of the virus makes all voters and poll workers vulnerable to infection and transmission while voting in person. Voters of color, who already face disproportionately longer in-person voting times that would increase the risk of exposure, are also disproportionately likely to contract and to die from the virus.

45.    As a result of this deadly pandemic, federal, state, and local officials have put in place various guidelines and restrictions in Missouri, the central feature of which is to limit

human contact either through in-home isolation or avoiding large gatherings, commonly known as "social distancing."

46. Prior to temporary provisions enacted on June 4, 2020 allowing all Missouri voters to cast ballots by mail during 2020 only, Missouri was an excuse-required absentee voting state, only allowing specific categories of voters with qualifying excuses to vote by absentee ballot. Even with these restrictive options to vote absentee, requests for absentee ballots surged for the June 2 elections despite the mandatory excuse requirement.

47. On June 4, 2020, Governor Parsons signed into law a bill, known as S.B. 631, creating two expansions of mail voting that have only accelerated requests to receive a ballot by mail for the November 3 election. First, the measure added an additional reason to vote absentee, allowing a voter to request an absentee ballot if "the voter has contracted or is in an at-risk category for contracting or transmitting" COVID-19.[2] MO. REV. STAT. § 115.277(1)(7). Second, recognizing the serious risk posed by the virus to all voters regardless of their underlying health, the measure allows any voter to request and cast a "mail-in ballot" in 2020. § 115.302(1). Both measures are limited to the 2020 elections and expire on Dec. 31, 2020.

_____

[2] The law defines the at-risk categories narrowly. MO. REV. STAT. § 115.277(6). "For purposes of this section, the voters who are in an at-risk category for contracting or transmitting severe acute respiratory syndrome coronavirus 2 are voters who:

    (1) Are sixty-five years of age or older;
    (2) Live in a long-term care facility licensed under chapter 198;
    (3) Have chronic lung disease or moderate to severe asthma;
    (4) Have serious heart conditions;
    (5) Are immunocompromised;
    (6) Have diabetes;
    (7) Have chronic kidney disease and are undergoing dialysis; or
    (8) Have liver disease."

48. Given the extraordinary circumstances created by COVID-19, it is not surprising that Missouri voters relied, at an unprecedented level, on mail voting for the June 2 and August 4, 2020, elections.

49. For example, St. Louis County received more than 100,000 absentee and mail-in ballot requests for the August 4, 2020 primary elections, compared to 15,000 absentee ballot requests for the August 2016 primary elections and 20,000 requests for the August 2018 primary elections. And, given the recent expansion of mail voting opportunities, Missouri voters are likely to seek to vote by mail and absentee ballots in record numbers for the November 3, 2020, election.

50. Requesting and casting a remote ballot requires a voter to undertake multiple steps in Missouri. Voters must apply in writing for an absentee or mail-in ballot. § 115.302(2); § 115.279(2). The application must be complete and bear the voter's signature (or mark) before the voter can receive a ballot in the mail. § 115.279(4); § 115.302(4). While absentee ballot applications can be submitted by U.S. mail or in person *or* by email or fax (§ 115.279(1))—ensuring immediate receipt—mail-in ballot applications can *only* be submitted by U.S. Mail or in person at the local election office. § 115.302(1).

51. The deadline to submit an application request for a remote ballot is 5:00 p.m. the second Wednesday—thirteen days—prior to Election Day, or October 21 for the November 3, 2020, election. §§ 115.279(3); 115.302(3). Upon receiving the voter's application, the election authority must then determine whether the application is complete and the voter is eligible to vote at their listed address in the election for which they have requested a ballot. § 115.287; § 115.302(8). Remote ballot applications have been rejected when voters have checked more than one reason for requesting a remote ballot or reason at all. § 115.287.

52.     Unlike absentee ballots which can be picked up in person, § 115.287(1), mail-in ballots must be mailed to the voter § 115.302(8). The voter must then fill out their ballot, and complete and sign the affidavit on the ballot envelope affirming their name, address, and other information. § 115.290; § 115.302(11); § 115.283(1). All mail-in voters must sign the ballot under oath in the presence of notary or other authorized official, as must absentee voters who do not qualify under the permanent or COVID-19specific disability or illness excuses. § 115.291(1); § 115.302(11). Finally, the voter must return their ballot to the local election authority. § 115.302(12).

53.     Unlike absentee ballots, which may be returned in person by the voter or a close relative, § 115.291(2), mail ballots can *only* be returned by U.S. mail, § 115.302(12), despite the fact that they can *apply* for a mail-in ballot in person, § 115.302(1).

54.     Mail ballot voters must also have their ballots notarized, a function that may be performed by a local election official in the same office to which their ballot must be mailed—and yet mail-in voters who do so must still place their ballot in the mail rather than simply hand it to the official standing in front of them, who has just witnessed and notarized their ballot envelope statement. § 115.302(7).

55.     In contrast, absentee voters can simply delivery their ballot to the local election authority themselves, or via a designated family member. § 115.291(2). Absentee ballot voters also have the option to request and cast their absentee ballot in person at the local election authority at the same time, including, if applicable, by voting curbside without leaving their car. § 115.291(2); § 115.436.1. None of these options are available for mail ballot voters, who can *only* submit their ballots by U.S. Mail. § 115.302(12).

56. Regardless of how a voter returns an absentee or mail ballot, ballots received after polls close on Election Day will not be counted. § 115.293(1); § 115.302(14). S.B. 631 left the Election Day Receipt Deadline untouched, despite the urging of voter advocates that Missouri implement a postmark deadline to accommodate the rise in anticipated ballots by mail due to the pandemic and prevent the unnecessary disenfranchisement of eligible voters.

57. Ballots submitted by uniformed or overseas voters by mail must only be postmarked on Election Day, § 115.916, and received by noon on the Friday preceding an election, § 115.920.1, to be counted.

58. The pandemic has placed significant strain on election administrators and postal workers alike. The need to maintain social distancing limits the number of election officials who can be assigned to process mail-in ballot applications at any one time. Thousands of postal workers have contracted COVID-19, dozens have died, and tens of thousands have had to quarantine for two weeks after being exposed to the virus.

59. Exacerbating these challenges, recent policy and operational changes have further reduced United States Postal Service ("USPS") processing capacity and are already having a significant impact on mail delivery times nationwide. These changes have included the elimination of overtime for postal workers; limits on other measures local postmasters use to ameliorate staffing shortages; limits on the number of stops individual mail trucks can make along a route; instructions to leave mail behind to be delivered the following day rather than make multiple trips to ensure timely delivery as dictated by longstanding policy; and the removal of hundreds of high-volume sorting machines from mail processing facilities, including fourteen in Missouri.

60. Any of these changes on their own would be likely to increase the time it takes ballots to travel through the mail system and for voters to complete the mail voting process. Implemented concurrently, and in the context of a public health crisis that has already seriously impacted USPS operational capacity, these changes are virtually certain to result in significant disruptions and delays in mail-in ballot delivery in advance of the November 3, 2020, election.

61. The Postal Service itself issued a letter to Missouri, 45 other states, and the District of Columbia warning that "certain deadlines for requesting and casting mail-in ballots are incongruous with the Postal Service's delivery standards" and that this may result in insufficient time for voters to mail back their ballots so that they are received by the deadline. Specifically, the USPS's July 31, 2020 to Defendant Secretary of State Ashcroft warned: "under our reading of Missouri's election laws, certain deadlines for requesting and casting mail-in ballots may be incongruous with the Postal Service's delivery standards. This mismatch creates a risk that some ballots requested near the deadline under state law will not be returned by mail in time to be counted under your laws as we understand them."  It further concludes: "there is a risk that, at least in certain circumstances, ballots may be requested in a manner that is consistent with your election rules and returned properly, and yet not be returned in time to be counted."  The letter also stated the voters should plan to allow "at least one week" for their ballot to travel through the mail.

62. Voters expressed concerns about mail delays in advance of the August 2020 elections, and voter advocates again urged lawmakers to take steps to ensure that ballots timely sent by voters would be counted.

63.     These challenges, combined with a surge in mail voting, have created a perfect storm for the November 3, 2020 election, resulting in significant delays in the transmission of ballots to voters and then back to election officials. Missouri voters have already felt the effects of this storm, with some reports indicating mail taking up to 24 days to arrive back election offices for the August 4, 2020, election.

64.     Data received from a majority of Missouri's local election authorities from the August 2020 primary elections illuminates how these measures result in rejection of ballots. Absentee ballot rejection data from the August 2020 elections shows that: nearly 25 percent of absentee ballots rejected in 73 of Missouri's 116 election jurisdictions were rejected due to a deficiency of the statement on their ballot envelope, and more than 35 percent of rejected ballots were rejected because they arrived at the election authority after the Election Day receipt deadline.

65.     Because of the deadly or debilitating consequences of COVID-19, the health risks of voting in person during the pandemic are significant, even though the risk that any individual will contract the virus is unpredictable. Hundreds or thousands of voters move through each polling place on Election Day, particularly in a presidential election, and no amount of planning or precaution can obviate the reality that this many people moving through an enclosed space—when the virus is as prevalent in the community as it is now and will be come November—will expose some voters to the virus. In contrast, the risk of exposure while dropping off a mail ballot is significantly lower—the voter can enter and exit their local election office in a matter of minutes, and is unlikely to encounter more than a handful of people during that time, or, in many jurisdictions, they can return their ballot curbside.

66. While voters casting absentee mail ballots at least have the option of dropping them off in person or via a close relative designee, and thereby avoiding potential disenfranchisement due to mail delays, voters casting mail-in ballots *must* return them via the U.S. Postal Service. These voters must therefore choose between returning their ballot by mail and risking having their ballot rejected through no fault of their own, voting in person and risking exposure to the coronavirus, or not voting at all.

67. Even voters who do successfully request and return their absentee or mail-in ballots by the deadline face disenfranchisement, because Missouri law requires local election authorities to reject remote ballots if the voter fails to correctly confirm their address (by either checking a box or filling out a field) or complete other information on the ballot envelope that is already included in the voter's registration record and/or that they already provided or affirmed on their ballot application. § 115.283(1); § 115.295(2)[3] ("Ballot Error Rejection Laws"). Because of this, Missouri election officials regularly reject ballots due to minor errors or omissions on the ballot envelope which are immaterial to determining a voter's qualification to vote.

68. In addition to failure to check an address confirmation box, another possible source of immaterial error is that many jurisdictions use the same ballot envelope for both absentee and mail-in ballots, and require the voter to mark which type of ballot they have cast, leading to voter confusion and error. Many voters who qualify and applied for an

---

[3] Although Missouri Code § 115.302 incorporates many of the same procedures for counting mail-in ballots as are in place for counting absentee ballots by providing that mail-in ballots be counted "using the procedures set out in sections 115.297, 115.299, 115.300, and 115.303" (the procedures for counting absentee ballots), the mail-in ballot statute does not actually incorporate the requirement that ballots with faulty statements must be rejected. *Compare* Mo. Rev. Code § 115.302 *with* § 115.295. Nevertheless, on information and belief, both absentee and mail-in ballots are being rejected under the faulty statement provisions of § 115.295.

"absentee" ballot may check the box for "mail-in" ballot because they are casting the ballot by mail. Even though Missouri law prohibits the rejection of ballots solely for a voter's failure to indicate the reason they are voting absentee, § 115.294, local election authorities can reject a ballot simply because they cannot discern from the envelope whether a voter is voting by excuse-only "absentee" or by no-excuse "mail-in" ballot. This is true even if a voter is over the age of 65 and, therefore, qualifies to vote a no-notary required absentee ballot. And despite, the fact that voters had to provide their reason for requesting a remote ballot. Missouri's Ballot Error Rejection Laws disenfranchise thousands of Missouri voters in every election. Indeed, Defendant Secretary Ashcroft has admitted in recent testimony before the United States Congress that two to three percent of mail ballots cast by Missouri voters are rejected in every election, including due to errors or omissions in completing the statement on the ballot envelope.

69. Recent evidence has confirmed this disastrous and entirely avoidable reality. In the August 4, 2020, election, 1538 of the 2391 absentee and mail-in ballots that were rejected in St. Louis County alone were rejected for an error or omission on the ballot envelope, such as failure to check a box or fill out an field on the ballot envelope indicating that the voter's mailing address is the same as their residential address. This address information is already contained in the voter's record and/or was affirmed on the voter's application, and in some cases is even already present on the envelope statement and is therefore unnecessary to determine a voter's eligibility.

70. Worse still, voters may never even learn that their ballot was rejected, and most will never have the opportunity to correct or affirm even the most minor errors or omissions. This is because Missouri law fails to provide that election officials must notify voters that the

statement on their ballot envelope is deficient, and that they provide voters with an opportunity to cure any defects, before rejecting their ballot.

71. Because remote ballots in Missouri must be received by close of polls on Election Day, such ballots must be "complete" and not contain any rejectionable ballot errors at that time. *See* Mo. Rev. Stat. § 115.293(1); § 115.302(14); § 115.295; § 115.477. Thus, voters whose mail-in or absentee ballots arrive on Election Day are not given any time to cure deficiencies with their ballots to have them counted.

72. Even in jurisdictions where election officials do undertake to notify voters of a problem with their ballot envelope, voters must appear in person to correct the error, even if the error could easily be addressed over the phone or through email and corrected by something as minor as checking a box on the envelope.

73. Options that may be available to voters to cure the deficiencies in their ballots include: (1) going to main office of their local election authority and fix the problem on their ballot; (2) going to a satellite office, fill out an affidavit of lost ballot and receive a new ballot; or (3) going to the polls on Election Day, sign an affidavit of lost ballot, and cast a ballot in person on Election Day

74. Many voters are unable to appear in person on short deadlines because they are elderly, infirm, lack transportation and do not live in close proximity to their local election authority, or another reason, as was made clear based on the experiences of Missouri voters in the August 4, 2020 election.

75. Further, requiring voters with or in a high-risk category for COVID-19 to go the shorter distance to their polling location in order to cast a ballot on Election Day places them at the risk that they—and presumably the state—were seeking to avoid.

76. Absent an injunction issued by this court, the Mail-In Requirement, Ballot Error Rejection Laws, and lack of notice and opportunity to cure, will each result in the disenfranchisement of countless Missouri voters in the November 3, 2020, election.

## CLAIMS FOR RELIEF

## COUNT I

**Undue Burden on the Fundamental Right to Vote in Violation of the
First and Fourteenth Amendments to the United States Constitution
(U.S. Const. Amend. I, XIV, 42 U.S.C. § 1983)**

77. Plaintiffs rely herein upon all the paragraphs of this Complaint.

78. Requiring mail-in ballots, but not absentee mail ballots, to be requested only by mail or in person and returned only by mail by close of polls on Election Day imposes a significant burden on Missouri voters' exercise of their fundamental right to vote, while advancing no legitimate state interest sufficiently weighty to justify this burden, in violation of the United States Constitution.

79. Under the First and Fourteenth Amendments to the United States Constitution, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the plaintiff's right to vote against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal quotation marks omitted); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens,

J., controlling opinion) (internal quotation marks omitted); *accord Miller v. Thurston*, 967 F.3d 727, 736-37 (8th Cir. 2020).

80.    Because gathering at the polling place while Missouri suffers from a deadly pandemic poses significant health risks, an unprecedented number of voters—at the encouragement of public officials—will attempt to vote by mail in the November 3, 2020 election. Because of delays in mail delivery, voters who timely request, complete, and place their ballots in the mail face disenfranchisement due to inability to comply with the Election Day Receipt Deadline through no fault of their own.

81.    Missouri law authorizes all voters to vote remotely in the November 3 election, but allows absentee voters to request their ballot by email or fax and to return their ballot by dropping it off in person or via a designee, while requiring mail-in voters to request their ballot *only* by mail or in person and to return their ballot *only* by mail. MO. REV. STAT. § 115.302(14). All mail and some absentee ballot envelopes must be signed by a notary public or other officer authorized to administer oaths, § 115.302(7), § 115.283, but some local election authorities will only notarize absentee ballots, not mail ballots. At the same time, Missouri law requires both mail-in and absentee ballots to be rejected if received by an election authority after the close of polls on Election Day. § 115.293; § 115.302(14).

82.    Because, according to the USPS, voters should expect to allow at least one week for a ballot to travel through the mail, the Mail-In Requirements require at least two weeks for a mail-in voter to complete the process if they are able to submit their application in person: one week to receive their ballot by mail and one week to return it by mail. At least three weeks are needed if the mail-in voter submits their application by mail—one week to submit their application, one week to receive the ballot, and one week to return it.

83. Mail-in voters who do not receive their ballot until close to Election Day must decide between returning their ballot by mail and risking likely disenfranchisement due to late receipt, voting in person at their polling place and risking exposure to the coronavirus, or not voting at all. In contrast, absentee voters who do not receive their ballot until just before Election Day can still drop it off in person or through a family member up to and including on Election Day, and can be sure their ballot will be received by the Election Day Receipt Deadline. Missouri therefore subjects some—but not all—remote voters to a significant risk of disenfranchisement due to delays in mail delivery.

84. The distinction drawn by Missouri law between the methods of request and return available to absentee voters compared to those available to mail-in voters is arbitrary and unjustified by any legitimate state interest. This is especially true given that both absentee and mail-in ballots must be received by the election authority by close of polls on Election Day in order to be counted.

85. Any state interest in the Mail-In Requirements is minimal at best.

86. Since all mail-in and most absentee voters must still have their ballots notarized, and because many notaries are not available during a pandemic, many remote voters are likely to go to their local election authority anyway to get their mail ballot notarized. They are then required to leave the election authority with their completed ballot, place it in the mail, and hope that it arrives by the Election Day Receipt Deadline.

87. This threat of arbitrary disenfranchisement is not hypothetical. Currently, the primary reasons that ballots submitted remotely are rejected by election officials is that they are received after the Election Day Receipt Deadline, as was on full display during the August 4, 2020, primary election. Unless enjoined by this Court, the Mail-In Requirements will

cause an even more significant wave of disenfranchisement in the November 3, 2020, general election, when voter participation is expected to be significantly greater and delays in mail delivery are likely to be even longer and more widespread.

88. While Missouri can advance no state interest sufficiently weighty to justify its Mail-In Requirements—nor its differential treatment of voters casting absentee and mail-in ballots—in any election, enforcement of the Mail-In Requirements is particularly burdensome and unjustified in the context of the pandemic and delays in mail delivery which are present in the November 3, 2020, election.

89. The Mail-In Requirements, in combination with the Election Day Receipt Deadline, the unreliability of mail delivery, and the COVID-19 pandemic, impose an undue burden on Missouri voters' fundamental right to vote in violation of the First and Fourteenth Amendments to the United States Constitution, and must be struck down.

90. Unless this court enjoins enforcement of the Mail-In Requirements, Plaintiffs' members and tens of thousands of Missouri voters face disenfranchisement in the November 3, 2020 general election.

## COUNT II

**Rejection of Ballots for Immaterial Errors or Omissions in Violation of the
Materiality Provision of the Civil Rights Act of 1964
52 U.S.C. § 10101(a)(2)(B), 42 U.S.C. § 1983)**

91. Plaintiffs rely herein upon all the paragraphs of this Complaint.

92. The Materiality Provision of the Civil Rights Act of 1964 prohibits disqualifying voters "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in

26

determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).

93. Where a voter has already provided and affirmed certain information, and election officials have already confirmed a voter's qualification to vote in a given election based on that information—either when the voter registers to vote or when they apply for a mail ballot— a voter's failure to correctly recite that information again on the ballot envelope cannot be material to determining their qualification to vote. *See, e.g.*, *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308-09 (N.D. Ga. 2018) (finding voter's failure to state their year of birth on mail ballot envelope was immaterial where that information had already been verified and where other information included on the envelope was sufficient to confirm the identity of the voter).

94. In order to register to vote in Missouri, a voter must affirm that they meet the voter registration requirements—citizenship, residency, age, having not been adjudged incapacitated nor disqualified by reason of criminal conviction. *See, e.g.*, MO. REV. STAT. § 115.133.

95. To apply for an absentee or mail-in ballot, a Missouri voter must affirm their name, address of registration, mailing address if applicable, and, if voting absentee, their reason (excuse) for doing so. § 115.279; § 115.302. They must also sign the application. *See* § 115.295. This information is used by the election authority to verify that the person requesting the mail ballot is a registered voter. Falsely completing an absentee or mail ballot application is a Class 1 Election Offense. § 115.297(4); § 115.302(4).

96. Missouri law requires each mail ballot envelope to include "a statement on which the voter shall state the voter's name, the voter's voting address, the voter's mailing address and the

voter's reason for voting an absentee ballot," § 115.283(1). Mail ballot voters, and some absentee ballot voters, are additionally required to have their ballot envelopes signed by a notary public or other officer authorized to administer oaths. § 115.302(7); § 115.283. Falsely completing an absentee or mail ballot affidavit on the ballot envelope is a Class 1 Election Offense. 115.302(19)

97.    Missouri law requires mail ballots that fail to correctly provide all of the information on the ballot envelope to be rejected, except for failure to state the voter's reason for voting an absentee ballot. § 115.295(2); § 115.294.

98.    The Ballot Error Rejection Laws regularly result in the disenfranchisement of eligible mail voters for immaterial errors. For example, many ballots are rejected because a voter failed to affirming that their mailing and residential address are the same by checking a box or filling out an address field —despite having already affirmed this when they registered to vote and then again when they applied for a ballot, and despite the address typically already being printed on the ballot envelope itself. In some jurisdictions, ballot envelopes ask voters to identify their reason for voting remote ballot (either absentee or mail). These ballots can be rejected because local election authorities cannot discern from the envelope whether a voter is voting by excuse-only "absentee" or by no-excuse "mail-in" ballot, an issue that has arisen with voters who are confused about the different meaning of these terms.

99.    Missouri law independently prohibits the rejection of ballots for a voter's failure to indicate the reason they are voting absentee, § 115.294, further reinforcing that this kind of error, on its own, is immaterial.

100.    Further, Missouri's laws regarding the acceptance of remote applications have resulted in voters having their remote ballot applications rejected.

101.    Voters who have submitted requests for absentee ballots—checking that they qualify for an absentee ballot for two reasons, including two reasons that qualify them to vote a no-notary absentee ballot (i.e., incapacity or confinement due to illness *and* having contracted COVID-19 or being in an at-risk category)—have had their ballot requests rejected because they selected more than one reason for requesting an absentee ballot.

102.    Further, all Missouri voters are at least eligible vote by mail-in ballot, § 115.287, but ballot requests may be denied if a voter does not select a reason for requesting a remote ballot.

103.    The rejection of otherwise-valid ballots and remote ballot applications for immaterial errors or omissions is contrary to the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), and will result in the disenfranchisement of countless Missouri voters in the November 3, 2020, election, unless enjoined by this Court.

## COUNT III

**Disparate Denial of Notice and Opportunity to Cure Ballot Errors Prior to Rejection in Violation of the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution**
**(U.S. Const. Amend. XIV, 42 U.S.C. § 1983)**

104.    Plaintiffs rely herein upon all the paragraphs of this Complaint.

105.    Missouri has conferred on all eligible voters a constitutionally protected liberty interest in casting ballots by mail. MO. REV. STAT. § 115.277; § 115.302. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies."). At a minimum, procedural due process requires that the State provide the voter pre-deprivation notice *and* an opportunity to be heard before being denied their protected liberty interest.

29

*See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). Because there is no possibility of meaningful post-deprivation process when a voter's ballot is rejected—there is no way to vote after an election has passed—sufficient pre-deprivation process is the constitutional imperative. *See Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 901 (8th Cir. 1994). *See also* Memorandum Opinion and Order, *Richardson v. Hancock*, 5:19-cv-00963, at 44-45 (W.D. Tx. Sept. 8, 2020); *Frederick v. Lawson*, No. 1:19-cv-01959, 2020 WL 4882696 (S.D. Ind. Aug. 20, 2020); *Self Advocacy Solutions N.D. v. Jaeger*, No. 3:20-cv-00071, 2020 WL 2951012 (D.N.D. June 3, 2020); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. 2018) ("Given that the State has provided voters with the opportunity to vote by absentee ballot, the State must now recognize that the "privilege of absentee voting is certainly 'deserving of due process.'"); *Zinermon v. Burch*, 494 U.S. 113, 137 (1990) ("[W]e cannot say that postdeprivation process was impossible ... [where the state] already has an established procedure."); *Martin*, 341 F. Supp. 3d at 1339-40 ("Because many of the procedures Plaintiffs request are already in place, the Court finds that additional procedures would involve minimal administrative burdens while still furthering the State's asserted interest in maintaining the integrity of its elections.").

106.   Missouri law fails to provide that its local election authorities must notify voters and provide them with an opportunity to cure any deficiencies on their ballot envelope statement prior to rejecting their ballot.

107.   Defendants' failure to ensure mail voters are provided with notice and an opportunity to cure defects in their absentee and mail-in ballot envelopes prior to rejecting those ballots

fails to meet minimum requirements of procedural due process and is therefore unconstitutional.

108.    Voters whose mail-in or absentee ballots arrive on Election Day are not given any time to cure deficiencies with their ballots to have them counted. *See* Mo. Rev. Stat. § 115.293(1); § 115.302(14); § 115.295; § 115.477.

109.    While some local election officials undertake to provide such a process, the lack of any consistent or uniform implementation means that, in addition to being wholly insufficient to satisfy constitutional requirements, it results in an arbitrary application of process which further undermines any interest in maintaining the current regime.

110.    Implementation of consistent procedures to provide all Missouri absentee and mail-in voters with adequate notice and a meaningful opportunity to cure any material deficiencies would impose only a minimal burden on the State. Many deficiencies could easily be cured remotely either through electronic or telephonic verification of the information in question.

111.    Absent an order issued by this Court, Missouri voters will continue to face the possible deprivation of their fundamental right to vote without due process of law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A.  Declaring that Missouri's Mail-In Requirements, MO. REV. STAT. §§ 115.302(1), 115.302(12), violate the First and Fourteenth Amendments to the United States Constitution on their face and in the context of the November 3, 2020 election;

B.  Preliminarily and permanently enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them or under their direction or control, from rejecting or otherwise not processing any otherwise-valid

remote ballot application—for either mail-in and absentee—submitted by email, fax, U.S. mail, or in person by 5:00 p.m. on the thirteenth day prior to Election Day;

C. Preliminarily and permanently enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them or under their direction or control, from rejecting or otherwise not counting any otherwise-valid remote ballot—both mail-in and absentee—that are:

    a. returned by U.S. mail or in person by the voter, or a relative of the voter who is within the second degree of consanguinity or affinity, at or before the close of polls on Election Day; or, in the alternative,

    b. postmarked by Election Day and received by noon of the Friday after Election Day;

D. Declaring that Missouri's practice of requiring the rejection of any remote ballot—either mail-in or absentee—for failure to correctly check an address confirmation box or mark which type of ballot they are casting on the ballot envelope, constitutes a violation of the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B);

E. Preliminarily and permanently enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them or under their direction or control, from rejecting or otherwise not counting any otherwise-valid remote ballot—either mail-in or absentee—for failure provide address information (either through failing to check an address confirmation box or writing the voters present address on the ballot envelope) or mark which type of ballot they are casting on the ballot envelope;

F. Declaring that Missouri's failure to provide that voters must be notified and afforded an opportunity to cure any defects in the statement on their remote ballot envelope, including through electronic or telephonic verification of any information other than their signature or

that of their witness, if applicable, prior to the rejection of their ballot constitutes a denial of Procedural Due Process in violation of the Fourteenth Amendment to the United States Constitution;

G. Preliminarily and permanently enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them or under their direction or control, from rejecting any remote ballot—either mail-in or absentee— because of defects in the statement on their mail ballot envelope without first providing the voter with notice and an opportunity to cure any defects, including through electronic or telephonic verification of any information other than their signature or that of their witness, if applicable;

H. Ordering Defendants to update all absentee and mail-in voting instructions and materials to reflect all forms of relief ordered by the Court, and to provide public notice to voters of all forms of relief ordered by the Court through public media, including through relevant internet websites maintained by Defendants;

I. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

J. Granting such other relief as the Court may deem just and proper.

Dated:   September 17, 2020

Naila Awan*
Kathryn Sadasivan*
DĒMOS
80 Broad Street, Fl 4
New York, NY 10014
Telephone: (212) 485-6065
nawan@demos.org
kasadasivan@demos.org

Chiraag Bains*
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: (202) 864-2746
cbains@demos.org

Ezra Rosenberg*
Ryan Snow*
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW
Suite 900
Washington, DC 20005
(202) 662-8600 (tel.)
(202) 783-0857 (fax)
erosenberg@lawyerscommittee.org
rsnow@lawyerscommittee.org

Respectfully submitted,

/s/ Anthony E. Rothert_____
Anthony Rothert, #44827
Jessie Steffan, #64861
Kayla Deloach, #72424
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, MO 63101
Telephone: (314) 652-3114
Facsimile: (314) 652-3112
arothert@aclu-mo.org
jsteffan@aclu-mo.org
kdeloach@aclu-mo.org

Denise Lieberman,* #47013
MISSOURI VOTER PROTECTION
COALITION
6047 Waterman Blvd.
St. Louis, MO 63112
Telephone: (314) 780-1833
denise@movpc.org
denise@deniselieberman.com

* Motion for Admission *Pro Hac Vice*
forthcoming