IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ORGANIZATION FOR BLACK STRUGGLE, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 2:20-CV-04184-BCW ) |
| JOHN R. ASHCROFT, in his official capacity as Missouri Secretary of State, et al., | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Plaintiffs the Organization for Black Struggle, the St. Louis A. Philip Randolph Institute, the Greater Kansas City A. Philip Randolph Institute, the National Council of Jewish Women St. Louis Section, and Missouri Faith Voices (hereinafter, "Plaintiffs") are seeking a temporary restraining order ("TRO") and preliminary injunction based on three claims, two of which allege Equal Protection and Due Process violations of the Fourteenth Amendment to the U.S Constitution and the third claim alleging a violation of the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B).[1] Defendants, through John R. Ashcroft, in his official capacity as Secretary of State of Missouri, oppose the motion seeking injunctive relief. The Court, being duly advised of the premises, grants in part and denies in part Plaintiffs' motion for preliminary injunctive relief and TRO.

---

[1] Amici curie the American Association of Retired Persons (AARP) and the AARP Foundation filed briefing in support of Plaintiffs' motion.

1

## BACKGROUND

Plaintiffs, on September 17, 2020, filed three claims against Defendant Ashcroft and the county election authorities of Greene County, Jackson County, St. Charles County, and St. Louis County. The three claims relate from Senate Bill 631.

Prior to 2020, Missouri authorized absentee voting for six specific categories of voters and all other Missouri voters voted in person. See Mo. Rev. Stat. § 115.277.1(1)-(6). In response to the COVID-19 pandemic, on June 4, 2020, the Missouri legislature enacted Senate Bill 631, which added an additional category (7) to absentee voting, allowing individuals who are in "an at-risk category" for COVID-19 to cast an absentee ballot without notarization. The bill also enacted new section Mo. Rev. Stat. § 115.302 allowing **all** Missourians who are registered voters to "mail-in" vote for elections in 2020.

The new law establishes different procedures for absentee voters and mail-in voters.[2] Absentee ballots may be requested by mail, email, fax, or in person. Mo. Rev. Stat. § 115.279.1. On the other hand, mail-in ballots must be requested either by mail or in person. Mo. Rev. Stat. § 115.302.1. Similarly though, if a request for an absentee ballot or a mail-in ballot is rejected, the local election authority (LEA) is required by statute to notify the applicant of the reason his or her application for a remote ballot, whether under § 115.277 or § 115.302, was rejected. In each instance, the remote ballot applicant can challenge the application rejection decision with the Elections Division of the Secretary of State's Office.

Once a remote voter's ballot application is approved and the remote voter receives the remote ballot, the process to complete the remote ballot is the same. The voter must fill out his or

---

[2] For purposes of this Order, the Court refers to those voters casting ballots under Mo. Rev. Stat. § 115.277 and Mo. Rev. Stat. § 115.302 as "remote voters," and ballots submitted under either § 115.277 for absentee, or § 115.302 for mail-in, as "remote ballots".

her name, address, signature attesting he or she is authorized to cast the ballot, and (for absentee ballots) the reason for voting absentee on the ballot envelope. Mo. Rev. Stat. § 115.302.8; § 115.291.1. A remote voter's failure to state a reason for voting absentee does not result in rejection of the ballot, but a voter's failure to provide on the ballot envelope his or her name, address, and/or signature attesting they are authorized to cast the ballot results in rejection of the ballot. Mo. Rev. Stat. § 115.294.

All ballots must be received by the close of polls on election day. Election authorities may not count ballots received after 7:00 p.m. on election day. Mo. Rev. Stat. § 115.293.1.

Absentee ballots may be returned one of two ways – by mail, or in person. If the absentee voter chooses the latter option, he or she delivers the ballot to the election authority or may have a relative return the absentee ballot on the voter's behalf, as long as the relative is within the second degree of consanguinity or affinity. Mo. Rev. Stat. § 115.291.2.

By contrast, "[e]ach mail-in ballot shall be returned to the election authority in the ballot envelope and shall **only** be returned by the voter by United States mail." Mo. Rev. Stat. § 115.302.12.

In the instant motion, Plaintiffs argue they are entitled to a preliminary injunction and TRO with respect to each of their three claims for relief against Defendants. With respect to Count I, Plaintiffs argue the 2020 remote ballot rules violate equal protection because Defendants treat those availing themselves of mail-in voting different from those availing themselves of absentee voting, imposing an undue burden on the right to vote. Plaintiffs assert a violation of equal protection because an absentee voter may apply for an absentee ballot in person, by mail, by email, or by fax, while a mail-in voter may apply for an absentee ballot only in person or by mail. Further, Plaintiffs assert a violation of equal protection because while an absentee voter may return his or

3

her ballot to the election authority by mail, or in person, or through a close relative, a mail-in voter may return his or her ballot to the election authority only through U.S. mail. Plaintiffs seek to enjoin Defendants' enforcement of these differing treatments.

With respect to Count II, Plaintiffs argue they are entitled to injunctive relief against Defendants' alleged violations of the materiality provision of the Civil Rights Act by rejecting ballot applications and ballots for immaterial errors.

With respect to Count III, Plaintiffs argue they are entitled to injunctive relief against Defendants' failure to provide voters with notice and a meaningful opportunity to cure any ballot errors before rejecting the ballot.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy," and "the burden of establishing the propriety of an injunction is on the movant." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The following factors are relevant to the Court's consideration of whether to grant injunctive relief: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance of the harm and the harm that the relief would cause to other litigants; and (4) the public interest." Id. (citing Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981)). Likelihood of success on the merits is the "most significant" favor, and "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013).

## ANALYSIS

"[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007). "In essence, the

4

question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). "[S]tanding imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III. This is the threshold question in every federal case, determining the power of the court to entertain suit." Id.

The standing inquiry requires the plaintiff to allege "some threatened or actual injury" traceable to the defendant, such that the plaintiff has "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial power on his behalf." Id. at 498-99.

To demonstrate Article III standing, a plaintiff must show each of the following: "(1) an injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) the likelihood that a favorable decision by the court will redress the alleged injury." Iowa League of Cities v. Env't Prot. Agency, 711 F.3d 844, 869 (8th Cir. 2013). An injury in fact sufficient to confer standing must be concrete and particularized, as well as actual and imminent, as opposed to hypothetical. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000); Warth, 422 U.S. at 501 (requiring a "distinct and palpable injury").

Defendants argue Plaintiffs, as advocacy organizations, do not have standing to assert any of their claims. First, Defendants argue all of Plaintiffs' claims are alleged under 42 U.S.C. § 1983, which protects only individual rights. Further, Defendants argue Plaintiffs have not shown standing through any of its individual members through which Plaintiffs might establish associational standing.

Plaintiffs argue they have established organizational standing such that they have suffered cognizable injuries, traceable to the defendants, that are amenable to redress through injunctive

relief. Plaintiffs further assert they have associational standing because their members otherwise have standing on their own, their members' rights at issue are related to Plaintiffs' purposes, and neither the claims at issue nor the relief sought requires the participation of any individual member.

"An association may have standing in its own right to seek judicial relief from injury to itself . . ." Warth, 422 U.S. at 511. "Standing may be found when there is a concrete and demonstrable injury to an organization's activities which drains its resources and is more than simply a setback to its abstract social interests." Nat'l Fed. of Blind of Mo. v. Cross, 184 F.3d 973, 979 (8th Cir. 1999) (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982)).

"If in a proper case the association seeks a declaration, injunction or other form of prospective relief, it can be reasonably supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." Warth, 422 U.S. at 515.

In this case, Plaintiffs are each advocacy organizations involved in efforts to promote voter registration and education and to protect the right to vote. For example, the Organization for Black Struggle (OBS) was founded to "address the needs and issues of the Black working-class" and is involved in efforts "to end voter suppression and disenfranchisement." (Doc. #1 at 7). Under the allegations of the complaint, OBS has diverted resources from its usual election year advocacy work to combat confusion and difficulties relating to the 2020 remote ballot rules. Each named plaintiff organization similarly alleges involvement in issues relating to voting rights, and the diversion of resources from other core work in order to educate the public and to dispel confusion relating to the 2020 remote ballot rules. The Court is thus satisfied Plaintiffs each have standing through diversion of resources from its other core work and pre-election activities, and that these diversions of resources are more than a minimal setback to an abstract interest. Additionally, Plaintiffs' alleged injury is traceable to the 2020 remote ballot rules which Defendants enforce and

6

implement. Finally, Plaintiffs seek only declaratory and injunctive relief, such that their claims are amenable to redress through a decision in Plaintiffs' favor. The Court finds Plaintiffs have organizational standing to assert Counts I, II, and III.

Moreover, though the complaint does not identify any particular member of any one of the plaintiff organizations, Plaintiffs' individual members have the right to vote and thus standing to litigate an impingement on that right. Associational standing requires Plaintiffs to show "(a) members would otherwise have standing to sue in their own right"; this requirement is thus satisfied. Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 333 (1977). In addition to demonstrating members' standing to sue in their own right, associational standing requires the association to show "(b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id.

As referenced, under the allegations of the complaint, Plaintiffs' alleged missions and community roles relate to voter registration and education, and/or the protection of the right to vote. Further, because Plaintiffs seek declaratory and injunctive relief, a decision favorable to Plaintiffs will accrue to the benefit of Plaintiffs' members and the constituencies they serve, and there is no need for individual joinder of each or any member. Thus, the Court finds Plaintiffs have associational standing for Counts I, II, and III.

Because the Court is satisfied of Plaintiffs' standing, the Court turns to consideration of the merits of whether Plaintiffs have demonstrated a right to preliminary injunctive relief. Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 (8th Cir. 2006).

7

Case 2:20-cv-04184-BCW   Document 65   Filed 10/09/20   Page 7 of 20

**A. Plaintiffs' motion for preliminary injunction and TRO based on Count I is granted.**

**1. Likelihood of success on the merits**

Count I alleges the 2020 remote ballot rules impose an undue burden on the right to vote because those availing themselves of mail-in voting are subject to different requirements for ballot applications and for casting their ballot as compared with absentee voters.

Plaintiffs argue the remote ballot rules violate equal protection as applied to remote voters who are not eligible to vote absentee because they are not statutorily at-risk for COVID-19 or otherwise eligible under § 115.277.1.

The first aspect of this equal protection challenge is that voters eligible to vote absentee can apply for their remote ballot electronically, while this option is not available to mail-in applicants.

The second aspect of this equal protection challenge is that absentee ballots can be dropped in person to the LEA, where mail-in ballots are accepted by U.S. mail only.

Plaintiffs seek to enjoin Defendants' different treatment for remote ballots by (1) allowing any voter seeking to vote remotely to apply for a remote ballot through the same means, whether it be in person, through a close relative, by mail, or by email or fax; and (2) allowing any voter seeking to vote remotely to return his or her ballot to the election authority in person, through a close relative, or by mail, thus enjoining § 115.302's requirement that mail-in ballots may be returned by U.S. mail only.

Plaintiffs allege the requirement that mail-in votes must be received by the election authority only by U.S. mail poses a risk of disenfranchisement through no fault of the voter because more people are seeking to vote remotely in an effort to avoid exposure to the coronavirus, leading to a higher volume of time-sensitive mail to be processed through an already overburdened U.S.

8

Postal Service.[3] Plaintiffs allege this risk of disenfranchisement is not justified by any legitimate state interests because Missouri law already provides that election authorities may accept absentee ballots not only by mail, but also in person.

Defendants argue the procedures for applying for and returning mail-in ballots are reasonable and nondiscriminatory and serve important regulatory interests. Defendants argue the State's interests in these mail-in requirements include "clarity, uniformity, ballot security, preserving limited state resources, reducing administrative burdens, and avoiding voter confusions."

"A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." Burdick v. Takushi, 504 U.S. 428, 434 (1992) (quoting Anderson v. Celebrezze, 460 U.S. 780, 788-89 (1983)).

"Under this standard, the rigorousness of [the] inquiry into the propriety of a state election law depends on the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." Id.

When the challenged restrictions are "severe" then the regulation must be "narrowly drawn to advance a state interest of compelling importance." Id. (quoting Norman v. Reed, 502 U.S 279, 289 (1992)).

---

[3] USPS sent a letter to Ashcroft on July 31, 2020 recognizing "risk that, at least in certain circumstances, ballots may be requested in a manner that is consistent with your election rules and returned properly, and yet not be returned in time to be counted." (Doc. #27-22).

9

Case 2:20-cv-04184-BCW   Document 65   Filed 10/09/20   Page 9 of 20

But when the challenged restriction imposed by the state election law creates only "reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restriction imposed. Id.

The Court first considers Count I with respect to equal protection in the ballot application process. Defendants argue the 2020 remote ballot rules installed new processes allowing more Missourians to vote remotely, which required them to create new materials and train election officials on brand new election procedures. Defendants specifically argue the way voters can request mail-in ballots is purposefully limited and serves the reasonable interest of requiring LEAs to monitor only one avenue for providing mail-in ballots.

While "election laws will invariably impose some burden upon individual voters," the distinction between Defendants' processing of remote ballot applications is not justified based on Defendants' own arguments. Burdick, 504 U.S. at 433. Defendants argue the 2020 remote ballot rules were installed to accommodate an influx of remote voters during the global pandemic. On this basis, Defendants' training and materials for LEAs already accounted for this increase in remote ballots, and presumably Defendants' election preparation anticipates votes from all eligible Missourians. Thus, there is no merit to Defendants' argument that there exists a reasonable basis to allow only absentee voters to request their remote ballot through electronic means; the number of ballots to be processed remains the same.

Moreover, Defendants' chaos argument is undercut by the existing absentee voter statute; the processes and means through which Defendants process remote ballot applications already exists and LEAs are already trained on the process. Additionally, in the Court's view, any chaos

10

Case 2:20-cv-04184-BCW   Document 65   Filed 10/09/20   Page 10 of 20

relating to the 2020 remote ballot rules would be assuaged by unanimity relative to the processing of remote ballot applications.

Notwithstanding the likelihood of Plaintiffs' success on the merits on this aspect of Count I, practical considerations work against injunctive relief with specific respect to Plaintiffs' equal protection claim relative to remote ballot *applications*. First, like the absentee voter statute, the mail-in voter statute provides a mechanism for LEAs to notify voters that there is some deficiency on the remote ballot application that prevents the LEAs from providing a ballot. Second, those remote voters who have applied for their remote ballots by now are, despite any delay attributable to the USPS, likely to receive their ballots with enough time to return mail them before the deadline.

By contrast, these practical concerns do not implicate Plaintiffs' equal protection challenge on the aspect of Defendants' different treatment in the way remote ballots can be returned to the LEAs so that they can be counted.

Missouri law prohibits election authorities from counting ballots received after the close of polls on election day. Though the 2020 remote ballot rules allow for more remote voters, those remote voters who are eligible to vote absentee under § 115.277 have, because they can walk their completed ballot into the LEA if they need to, less risk of total disenfranchisement. By contrast, those remote voters not eligible to vote absentee, and instead voting under § 115.302, even if they do everything right and plan well in advance, run the risk of total disenfranchisement in the form of their vote not being counted because of delays not of the voter's own making.

Defendants argue the process for mail-in ballots protects ballot security and against voter fraud. However, the absentee voter statute already provides an acceptable framework to serve these interests. Defendants do not argue any particular risk of voter fraud for mail-in ballots that is not

also a risk for absentee ballots. In fact, both remote ballot statutes provide for the same required information, suggesting the mechanism for preventing voter fraud under § 115.277 is adequate for preventing voter fraud under § 115.302.

Finally, Defendants argue requiring mail-in ballots be returned by U.S. mail, as opposed to permitting them to be dropped off in-person at the election authority or through a close relative like an absentee voter may do, imposes a minimal burden. To be sure, in a vacuum, placing a mail-in ballot in the mail is not a high burden on voters. However, when the postal service has informed the State that it may have issues delivering mail in time, in addition to the expected increase in volume for remote votes, the new mail-in rules require much more from the mail-in voter than simply placing his or her ballot in the mailbox. For one thing, Missouri voters who are not in a "high-risk" category to vote absentee must request, again through the mail, their mail-in ballots well in advance of election day and wait for the ballot, at which time the mail-in voter must hope the ballot is delivered, again through the mail, in time for the voter to complete the ballot, get the ballot envelope notarized, and get it back in the mail no later than October 27, 2020 and hope the ballot is received by the election authority before close of polls on election day. Under the scheme to cast an absentee ballot, the absentee voter has the option to, if they worry their ballot will not make it to the election authority in time to be counted, or for any other number of infinite reasons, deliver the absentee ballot to the election authority in person. Mail-in voters do not have the same option to take steps to ensure their ballot is cast.

The Court recognizes Plaintiffs' argument is somewhat counter-intuitive. Plaintiffs are seeking the opportunity for remote voters, who were hoping to avoid exposure to the coronavirus by voting remotely, to go to the polling places those voters were trying to avoid. However, allowing all remote voters to deliver his or her completed ballot in person to the LEA provides for all remote

voters, and not just those eligible to vote absentee, to avoid the potential risk of coronavirus that they might otherwise not be able to avoid at their polling place on election day.

In sum, considered alone, requiring a remote voter to put a ballot in a mailbox does not sound like a particularly arduous or severe burden. However, Defendants have presented no reasonable justification for different treatment of remote voters. On this basis, because the right to vote is at issue and the risk is total disenfranchisement even if the voter does everything right, and because the Defendants already have a scheme in place to accommodate remote ballots, the Court finds Plaintiffs likely to succeed on the merits of Count I as it relates to the manner in which remote ballots can be returned to the election authority.

### 2. Irreparable harm, balance of the harms, public interest

The other Dataphase factors also weigh in favor of preliminary injunctive relief. Plaintiffs' irreparable harm is the denial of the right to vote. Gen. Motors Corp. v. Harry Brown's LLC, 563 F.3d 312, 318 (8th Cir. 2009) (irreparable harm incurred when harm cannot be compensated through damages).

Further, as discussed above, the harm to Defendants in relying on the absentee voting scheme for all remote ballots is minimal; the infrastructure already exists. By contrast, requiring remote voters who do not otherwise meet the requirements to vote absentee to apply for and return their ballots only by mail runs a risk of disenfranchisement.

Finally, the Court finds the public interest factor weighs in favor of injunctive relief. Burdick, 504 U.S. at 441 (quoting Wesberry v. Sanders, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.")). The protection of right to vote "is always in the public interest." League of Women Voters of Mo. v. Ashcroft, 336 F. Supp. 3d 998, 1006 (W.D.

13

Mo. 2018) (citing Action NC v. Strach, 216 F. Supp. 3d 597, 622 (M.D.N.C. 2016); Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012); Fish v. Kobach, 840 F.3d 710, 752 (10th Cir. 2016)).

The Court concludes Plaintiffs are entitled to preliminary injunctive relief on Count I as set forth above.

### B. Plaintiffs' motion for preliminary injunction and TRO based on Count II is denied.

#### 1. Likelihood of success on the merits

Plaintiffs seek injunctive relief under Count II for violations of the Civil Rights Act's Materiality Provision, 52 U.S.C. § 10101(a)(2)(B) based on Defendants' alleged rejection of remote ballot applications and remote ballot envelopes. Plaintiffs assert they are likely to succeed on the merits of this claim because Defendants, or more precisely, LEAs, reject incomplete applications for remote ballots, as well as remote ballots returned in ballot envelopes with deficiencies, even when these errors are not material.

Defendants argue Plaintiffs cannot show a likelihood of success on the merits under § 10101(a)(2)(B). First, Defendants argue the materiality provision does not create a private right of action; only the attorney general may initiate a claim for violation of this statute. Second, Defendants argue the materiality provision applies only to registration and application materials and not to errors and omissions on ballot envelopes. Third, Defendants argue the materiality provision does not prohibit Defendants' rejection of ballot envelopes that are unclear as to the voter's name, address, and attestation.

The materiality provision is as follows:

> [n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or

14

omission is not material in determining whether such individual is qualified under State law to vote in such election . . . .

52 U.S.C. § 10101(a)(2)(B). This statute "was intended to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." Martin v. Crittenden, 347 F. Supp. 3d 1302, 1308 (N.D. Ga. 2018) (quoting Schwier v. Cox, 340 F.3d 1284, 1294 (11th Cir. 2003)).

Missouri law requires all remote ballot applications be in writing and provide the applicant's name, the address of registration, the mailing address if requesting a ballot by mail, signature, and the reason for the remote ballot request. Mo. Rev. Stat. §§ 115.279.2; 115.302.2, .4. Similarly, Missouri law requires a remote ballot be returned in a ballot envelope reflecting the voter's name, address, and attestation / signature. Mo. Rev. Stat. §§ 115.283.1, 115.295.2.

In addition, both § 115.279 and § 115.302 provide for the LEA to notify the remote ballot applicant in the event the application is deficient, such that a voter would be aware that he or she needed to take additional steps to provide the required information.

These categories of required information are not immaterial to voter qualification. The information required on remote ballot applications and remote ballot envelopes is material to determining voter qualification. Therefore, LEAs may reject applications and ballots that do not clearly indicate the required information required by Missouri statute without offending 52 U.S.C. § 10101(a)(2)(B). The Court concludes Plaintiffs are unlikely to succeed on the merits of Count II.

### 2. Irreparable harm, balance of harms, public interest

As to the remaining Dataphase factors, election regulations, and perhaps in particular those related to voter qualification, serve the public interest because they protect the integrity of

elections. Burdick, 504 U.S. at 433. Defendants' interest in confirming voter qualification through the statutory means identified thus outweighs any harm to Plaintiffs.

Plaintiffs' motion for preliminary injunctive relief on Count II is denied.

**C. Plaintiffs' motion for preliminary injunction and TRO based on Count III is denied.**

### 1. Likelihood of success on the merits

Plaintiffs argue a likelihood of success on the merits of Count III alleging violation of procedural due process because Missouri law does not provide its remote voters with adequate notice and an opportunity to cure any ballot errors. Plaintiffs assert that the 2020 remote ballot rules create a liberty interest in the right to vote by mail to which procedural due process applies.

Defendants argue Plaintiffs cannot demonstrate a likelihood of success on the merits of Count III because there is no liberty interest in the right to vote by mail.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "Due process is flexible and calls for such procedural protections as the particular situation demands," and requires consideration of the governmental and private interests at issue. Id. at 334 (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

A procedural due process claim requires a two-step analysis: (1) "first, whether there exists a liberty or property interest of which a person has been deprived" and, if yes, (2) "whether the procedures followed by the State were constitutionally sufficient." Jenner v. Nikolas, 828 F.3d 713, 716 (8th Cir. 2016) (citing Swarthout v. Cooke, 562 U.S. 216, 219 (2011).

Plaintiffs allege Missouri, through §§ 115.277 and 115.302, has conferred on eligible voters a protected liberty interest in voting by mail, such that the state must provide, before rejecting a remote ballot, notice to the voter and the opportunity to cure the ballot error giving rise to the rejection. Plaintiffs allege that because Missouri does not uniformly provide for notice to and the opportunity to cure any errors to remote voters, Plaintiffs are denied procedural due process. Further, Plaintiffs argues that even where certain election authorities notify remote voters of any ballot errors, the opportunity to cure requires the remote voter to correct the errors in person, which Plaintiffs allege is not a meaningful opportunity that fulfills constitutional requirements.

Plaintiffs' success on their procedural due process claim first requires them to establish the existence of a liberty or property interests and the deprivation of the same. Schmidt v. Des Moines Pub. Sch., 655 F.3d 811, 817-18 (8th Cir. 2011) (citing Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999)). Recognized liberty interests may arise from the Due Process Clause, or they may also arise "from an expectation or interest created by state law or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

While the right to vote is certainly a substantive due process right, the right to vote by mail is not a liberty interest to which procedural due process protections apply. Indeed, Plaintiffs concede there exists no constitutional right, under Missouri or federal law, to cast a remote ballot. (Doc. #27 at 32). To the extent Plaintiffs argue Missouri has created a protected liberty interest in the right to cast a remote ballot in light of the COVID-19 pandemic, the Court is unpersuaded. Straughan v. Meyers, 187 S.W. 1159, 1164 (Mo. 1916) (voting by mail as a special privilege); Barks v. Turnbeau, 573 S.W.2d 677, 681 (Mo. Ct. App. 1978) (voting absentee is a privilege not a right); State ex rel. Hand v. Bilyeu, 351 S.W.2d 457 (Mo. 1961).

Plaintiffs are not likely to succeed on the merits of Count III.

### 2. Irreparable harm, balance of the harms, and public interest

As to the remaining Dataphase factors with respect to Count III, Plaintiffs have not sufficiently alleged irreparable harm as to the lack of notice and cure provisions because the right to vote by mail does not trigger procedure due process protections. The balance of the harms on this count weighs against injunctive relief because the record shows Defendants have already been required to rely on volunteers for notification efforts under the current scheme. Finally, the public interest favors Defendants' confirmation of eligibility requirements to cast a ballot and the State's adequate allocation of resources as to the availability of notice and cure procedures.

The Court thus concludes Plaintiffs' motion for injunctive relief on Count III is denied.

### CONCLUSION AND REMEDY

For the foregoing reasons, after weighing all relevant factors, this Court concludes Plaintiffs are likely to succeed on the merits of Count I, and any harm or cost to Defendants to comply with the Court's order are outweighed by the imminent and irreparable harm to be incurred by Plaintiffs, and thus Missouri voters, under S.B. 631's different treatment of "absentee voters" versus "mail-in voters" for the manner in which these two categories of remote voters may return their ballot to the election authority to be cast.

Although the Court has found favorably for Plaintiffs on their equal protection claim under Count I, it is not lost on this Court the timing of the lawsuit and the relatively short period of time before the November 3, 2020 election. The Court is cognizant that the process for remote voting commenced on September 22, 2020, and Missourians have requested and received absentee or mail-in ballots, and further, that Defendants have implemented S.B. 631 and disseminated educational materials statewide consistent with the new law.

18

Case 2:20-cv-04184-BCW   Document 65   Filed 10/09/20   Page 18 of 20

Given this reality, the Court will not require Defendants and their respective agents, officers, employees, successors, and any and all acting together or under the direction or control of the Secretary of State to change the methods for which Defendants accept remote ballot *applications*. The last day to request a remote ballot is October 22, 2020. To require Defendants to change their policies and educational materials at this stage is not practical and, moreover, has potential to create more confusion among LEAs.

By contrast, however, the Court finds there is adequate time for Defendants to address the equal protection violation borne out by the record as it relates to the *return* of remote ballots to the election authority to be cast and counted. Because all remote ballots must be received by the close of polls on election day, there is sufficient time to disseminate the simple message to Defendants, their respective agents, officers employees, successors, and any and all acting together or under the direction or control of the Secretary of State, and the public, that any ballot received through the mail may be returned through the mail **or in person** (or through a relative within the second degree of consanguinity or affinity) to the election authority. In this context, any harm or cost to Defendants in implementing this change is minimal, especially when weighed against the risk of total disenfranchisement of Missouri voters. Accordingly, it is hereby

ORDERED Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order (Doc. #23) is GRANTED IN PART and DENIED PART. The motion is granted on Count I and denied on Counts II and III. It is further

ORDERED Defendants their respective agents, officers employees, successors, and any and all acting together or under the direction or control of the Secretary of State shall not reject or otherwise fail to count any otherwise valid remote ballot – whether absentee or mail-in – that is returned by mail, or in person by the voter, or through a relative of the voter who is within the

second degree of consanguinity or affinity, at or before the close of polls on Election Day. It is further

ORDERED Defendants shall immediately and as soon as practicable implement this Order through distribution to all LEAs, and shall otherwise take steps to inform the voting public that any ballot received through the mail can be returned by mail or in person or through a close relative, i.e. the same manners in which absentee ballots are cast.

IT IS SO ORDERED.


DATED: <u>October 9, 2020</u>

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT