# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| ORGANIZATION FOR BLACK STRUGGLE, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> JOHN R. ASHCROFT, ET AL., <br><br> *Defendants*. | No. 2:20-cv-4184-BCW <br><br> *Request for Expedited Consideration* |

### Emergency Motion to Vacate Stay and Suggestions in Support[1]

**I.  Motion**

Plaintiffs request this Court enter an order vacating the administrative stay entered on October 10, 2020 (Doc. #68) and denying any further stay of the preliminary injunction issued in this case.

On October 9, 2020, this Court granted in part Plaintiffs' motion for a preliminary injunction. (Doc. #65). In relevant part, this Court found that during the COVID-19 pandemic, Missouri's failure to make the same methods of ballot return available to all remote voters likely violates the First and Fourteenth Amendments, *id*. at 11-13, and ordered:

- "Defendants their respective agents, officers employees, successors, and any and all acting together or under the direction or control of the Secretary of State shall not reject or otherwise fail to count any otherwise valid remote ballot – whether absentee or mail-in –

---

[1] Because the stay was intended to be temporary and Election Day is quickly approaching, Plaintiffs request that this Court act on this Motion as soon as possible.

1

that is returned by mail, or in person by the voter, or through a relative of the voter who is within the second degree of consanguinity or affinity, at or before the close of polls on Election Day;" and

- "Defendants shall immediately and as soon as practicable implement this Order through distribution to all LEAs, and shall otherwise take steps to inform the voting public that any ballot received through the mail can be returned by mail or in person or through a close relative, i.e. the same manners in which absentee ballots are cast."

*Id.* at 19-20. This relief requires, among other things, that Defendant local election authorities accept all remote ballots returned by any mail carrier or in-person, meaning that Defendant local election authorities are prohibited from discriminating between the type of remote ballot a person has submitted and its means of return in determining whether that voter's ballot will count.

Ashcroft appealed. (Doc. #66). No other Defendant has appealed. Ashcroft requested this Court enter a stay pending appeal and "a temporary administrative stay . . . to allow this Court and the Eighth Circuit to consider a stay pending appeal." (Doc. #67). This Court granted Ashcroft's "motion for temporary administrative stay" and ordered "[t]he preliminary injunction order . . . [be] temporarily administratively stayed pending ruling on appeal by the Eighth Circuit." (Doc. #68).

Viewing this Court's grant of a temporary administrative stay as "a temporary administrative stay of its injunction, pending th[e Eighth Circuit]'s ruling on the Secretary's motion to stay injunction pending appeal," Ashcroft moved the Eighth Circuit for a stay pending appeal on October 12. *Ashcroft Mtn for Stay*, at 9 (8th Cir. Oct. 12, 2020). Plaintiffs filed their opposition the same day. Plaintiffs understand that the motion was then assigned to a panel and taken under advisement.

The Eighth Circuit has not yet ruled on Ashcroft's motion. Because the temporary administrative stay has served its purpose of allowing Ashcroft to request a stay from the Eighth Circuit, and with Election Day rapidly approaching, the equities now favor an order vacating the stay and denying any further stay of the preliminary injunction.

II.     **Suggestions in Support**

The temporary administrative stay granted by this Court, (Doc. #68), should be vacated, as Defendant Ashcroft has had an opportunity to fully brief his request for a stay at the Eighth Circuit and has failed to meet his burden for establishing that a stay pending appeal should be granted in the present case. As the party requesting issuance of a stay pending appeal, Ashcroft bears the burden of showing that the circumstances justify such an exercise of judicial discretion. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *accord Twin Cities Galleries, LLC v. Media Arts Grp., Inc.*, 431 F. Supp. 2d 980, 983 (D. Minn. 2006). In determining whether Ashcroft has established the necessary justification for exercising that discretion, the Court must consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434; *see also James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982); *accord M.B. v. Corsi*, No. 2:17-CV-04102-NKL, 2018 WL 5504178, at *2 (W.D. Mo. Oct. 29, 2018); *Brady v. NFL*, 640 F.3d 785, 789 (8th Cir. 2011) ("The movant must show that it will suffer irreparable injury unless a stay is granted."). Absent clear error, a District Court's decision granting a preliminary injunction is accorded great deference. *McKinney ex rel. N.L.R.B. v. S. Bakeries, LLC*, 786 F.3d 1119, 1122 (8th Cir. 2015). The factors Ashcroft must establish weigh in his favor to justify a stay mirror those Plaintiffs were required to show when requesting this Court order a preliminary injunction in the first instance. For the reasons this Court granted

Plaintiffs a preliminary injunction on their request that mail-in voters be granted the same opportunities to return their ballots as absentee voters, Ashcroft is not entitled to a stay.

Ashcroft is not likely to succeed on appeal. The issue here is how the *Anderson-Burdick* balancing test applies when the burden imposed on voters, even if not "severe," *simply cannot be justified by any legitimate state interest. Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789-90 (1983)). Because Plaintiffs demonstrated a significant burden on the right to vote, a court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id*. Under this sliding scale test, *any* burden on the right to vote "must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., plurality opinion); *see also Brakebill v. Jaeger*, 932 F.3d 671, 688 (8th Cir. 2019) ("[e]ven rational and modest burdens . . . will fail" if they are not justified by sufficiently weighty state interests). These burdens must be considered in the context of the COVID-19 pandemic. Moreover, Plaintiffs demonstrated that the distinction among ballot return options for similarly situated remote voters is arbitrary and not justified by any sufficient state interest.

As in his opposition to Plaintiffs' motion for a preliminary injunction, Ashcroft fails to advance any legitimate justification for placing restrictions on how one type of remote voter (mail-in) can return their ballots that outweigh the burden that these restrictions place on voters. Nor does he explain why Missouri deems it necessary to impose new and different provisions from the longstanding remote voting ballot return procedures already in place for absentee voters for the

small percentage of remote voters who cast a mail-in ballot.[2] Ashcroft's failure at any point in this litigation to produce a rationale that links Missouri's differential treatment of similarly situated remote voters (and divergence from longstanding procedure) to *any* state interest demonstrates why Ashcroft is not likely to prevail on appeal.

Ashcroft also fails to show how he will be irreparably injured absent a stay. Indeed, he does not even try. Instead, he baldly asserts that changing the rules for how people can return their mail-in ballots between now and November 3 is the same as changing the rules for casting an in-person ballot on Election Day. But nothing ordered by this Court changed qualifications to vote a mail-in ballot or the procedures voters must follow to complete a mail-in ballot (i.e., completion of the ballot envelope, including notarization). The Court has merely opened additional avenues of return to the one subset of remote voters (mail-in voters) who face an increased likelihood of disenfranchisement due to the limited ballot return methods available to them, to make ballot return methods consistent with those available to other remote voters (absentee voters). If anything, this reduces the burdens on local election authorities by allowing them to uniformly accept the return of remote ballots in the same ways they have for years, rather than engaging in the time-consuming process of determining whether the voter is dropping off an absentee ballot (acceptable) or mail-in ballot (unacceptable).

In addition, as the evidence before this Court shows, Plaintiffs and other interested parties are substantially injured by a stay. Voters are concerned not only about contracting and transmitting COVID-19, but also about having their ballots counted. For the first time this summer,

---

[2] The August 2020 election is the only other election in Missouri where mail-in voting has been available. In that election, across Missouri's 116 election jurisdictions, mail-in ballots accounted for only 4.8 percent of the remote ballots sent to voters and 4.2 percent of those received, (Doc. #46-1, atts. 4, 5). However, approximately 39 percent of rejected mail-in ballots were rejected because they were received after close of polls on Election Day, (*id*. att. 5).

5

Case 2:20-cv-04184-BCW    Document 73    Filed 10/21/20    Page 5 of 9

Missouri placed arbitrary and unjustifiable restrictions on the submission of a subset of remote ballots that subjects mail-in voters to a higher likelihood of disenfranchisement. The preliminary injunction reduces confusion and ensures the same rules apply to all remote voters who, in the midst of mail delays and a pandemic, face tight deadlines returning their ballots to ensure they arrive at their local election office before close of polls on Election Day.[3]

Finally, the public interest weighs against a stay. A preliminary injunction serves the public interest when it helps permit "as many qualified voters to vote as possible." *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012); *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (same); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (same); *Democratic Nat'l Comm. v. Bostelmann*, 2020 U.S. Dist. LEXIS 57918, *47 (W.D. Wis. Apr. 2, 2020) (same) ("As a general matter, '[e]nforcing a constitutional right is in the public interest.'" (quoting *Whole Woman's Health All. v. Hill*, 937 F.3d 864, 875 (7th Cir. 2019)); *Action NC v. Strach*, 216 F. Supp. 3d 587, 648 (M.D.N.C. 2016) ("'[F]avoring enfranchisement and ensuring that qualified voters' exercise their right to vote' is always in the public interest." (citation omitted)); *ACORN v. Scott*, No. 08-cv-4084, 2008 WL 2787931, at *8 (W.D. Mo. July 15, 2008) (a preliminary injunction "will serve the public interest by . . . extending the opportunity to vote to Missouri citizens in a meaningful way"). Indeed, "ensuring qualified voters exercise their right to vote is always in the public interest." *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1006 (W.D. Mo. 2018) (internal citation

---

[3] This Court should not give credence to Ashcroft's fanciful assertion that COVID-19 does not present a threat to people during in-person voting because there were no reported cases of COVID-19 being transmitted during Missouri's August primary election. This hasty generalization is an inductive fallacy contradicted by the evidence in the record.

6

omitted). Because a stay would harm the public interest, Ashcroft's requested should be denied. *See James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982).

Unable to meet the traditional factors for a stay, Ashcroft urges that *Purcell v. Gonzalez*, 549 U.S. 1 (2006), mandates a stay in this case. It does not. *Purcell* did not create a blanket presumption—let alone a *per se* rule—against enjoining unconstitutional voting laws or procedures as an election nears. "*Purcell* is not a magic wand that defendants can waive to make any unconstitutional election restriction disappear so long as an impending election exists." *People First of Ala. v. Sec'y of State*, No. 20-12184, 2020 WL 3478093, at *8 (11th Cir. June 25, 2020) (Rosenbaum, J. & Pryor, J., concurring). Rather, *Purcell* instructs courts to, in the run-up to an election, make a fact-specific inquiry—whether a court order might cause "voter confusion *and consequent incentive to remain away from the polls*," 549 U.S. at 4-5 (emphasis added)— which this District Court found to weigh *in favor* of an injunction, not against it. (Doc. #65, at 10-11) (finding uniform processes for absentee and mail-in ballots would reduce confusion). Absent the narrow injunction ordered, Missouri voters will be at "risk [of] total disenfranchisement even if the voter does everything right." *Id.* at 13.

The concerns animating *Purcell* and its progeny do not apply in this case. Permitting Missouri's mail-in voters to use the *existing* method of return for remote ballots that has been used by Missouri voters for years, and which is already available to the vast majority of remote voters, will not lead to confusion—and Ashcroft provides nothing to suggest it will nor, indeed to justify the discrimination to begin with. The record includes substantial evidence of voter confusion resulting from the state's two-track process for remote voting—confusion that will persist if this Court's preliminary injunction remains stayed. A *uniform* remote ballot return process will *alleviate* voter confusion and serve the interests of justice in this case.

7

Case 2:20-cv-04184-BCW   Document 73   Filed 10/21/20   Page 7 of 9

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court vacate the administrative stay entered on October 10, 2020 (Doc. #68) and deny any further stay of the preliminary injunction.

Dated: October 21, 2020

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony Rothert, #44827
Jessie Steffan, #64861
Kayla Deloach, #72424
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, MO 63101
Telephone: (314) 652-3114
Facsimile: (314) 652-3112
arothert@aclu-mo.org
jsteffan@aclu-mo.org
kdeloach@aclu-mo.org

Denise D. Lieberman,* #47013
MISSOURI VOTER PROTECTION COALITION
6047 Waterman Blvd.
St. Louis, MO 63112
Telephone: (314) 780-1833
denise@movpc.org
denise@deniselieberman.com

Naila Awan*
Kathryn Sadasivan*
DĒMOS
80 Broad Street, Fl 4
New York, NY 10014
Telephone: (212) 485-6065
nawan@demos.org
kasadasivan@demos.org

Chiraag Bains*
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: (202) 864-2746
cbains@demos.org

Ezra Rosenberg*
Ryan Snow*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW
Suite 900
Washington, DC 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
erosenberg@lawyerscommittee.org
rsnow@lawyerscommittee.org

\*   Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I certify that on October 21, 2020, I filed the foregoing with the Clerk of the Court using the CM/ECF system, and a copy was made available to all electronic filing participants.

/s/ Anthony E. Rothert